NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MATTHEW FREEMAN,                   :
                                   :   Civ. Action No. 18-11566(RMB)
            Plaintiff,             :
                                   :
      v.                           :              OPINION
                                   :
GARY G. SCHAFFER, *et al.*,        :
                                   :
            Defendants.            :

APPEARANCES:

JEFFREY MICHAEL PATTI, Esq.
PATTI & PATTI, ESQS.
255 WOODPORT ROAD
SPARTA, NJ 07871
         On behalf of Plaintiff

RICHARD GOLDSTEIN, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
15000 MIDLANTIC DRIVE, Suite 200
P.O. BOX 5429
MOUNT LAUREL, NJ 08054
         On behalf of Defendants Cape May County, Cape May County
Correctional Center, Cape May County Sheriff's Office, Grady
Faircloth, Vincent Grencavich, Kenneth Hill, Joseph Hoover, Mark
Howard, William Lear, Donald Lombardo, Gary G. Schaffer


**BUMB**, United States District Judge

      This matter comes before the Court upon Defendants' motion to

dismiss Plaintiff's Amended Complaint[1] ("Defs' Mot. to Dismiss,"

ECF No. 20 and "Defs' Brief," ECF No. 20-2); Plaintiff's opposition

---

[1] Defendants' motion to dismiss was filed before Plaintiff amended
his complaint but the motion to dismiss is now applicable to the
Amended Complaint. (Def's Letter, ECF No. 25.)

to Defendants' motion to dismiss ("Pl's Opp. To Defs' Mot. to Dismiss," ECF No. 24); and the parties pre-motion conference letters (Defs' Letter, ECF No. 25; Pl's Letter, ECF No. 26.) This Court will decide the motions on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court will grant in part and deny in part Defendants' motion to dismiss.

I.   BACKGROUND

In his Amended Complaint, Plaintiff alleges that at various times between January 24, 2014 and July 27, 2016, he was an inmate and/or a pre-trial detainee lodged at Cape May County Correctional Center ("CMCCC"). (Am. Compl., ECF No. 22, ¶19.) CMCCC uses an "emergency restraint chair," whereby an inmate is strapped into a chair around the waist and his hands are cuffed behind his back and his legs are shackled. (Id., ¶20.) Straps are wrapped from the inmate's neck down to his feet, completely immobilizing the inmates and causing severe pain and discomfort. (Id.)

Proper use of the restraint chair requires administrative approval and is to be used only in those instances where corrections staff have a reasonable concern that an inmate's behavior is a threat to himself or others. (Id., ¶22.) Use of the restraint chair should be discontinued when the inmate no longer poses a risk of harm to himself or others. (Am. Compl., ECF No. 22, ¶23.) The restraint chair is not to be used as a disciplinary

device or a means for intimidation and doing so amounts to torture. (Am. Compl., ECF No. 22, ¶24.) Defendants Gary G. Schaffer and Donald Lombardo were responsible for the oversight of the operations, creating and implementing policies and procedures, implementing well settled practice and procedures, and implementing official decisions and policy statements at the CMCCC, including the use of the restraint chair. (Id., ¶25.)

Plaintiff's commitment began at CMCCC on January 24, 2014 until he was transferred to Ancora State Hospital on July 27, 2016. (Id., ¶27.) During the relevant time period, Plaintiff was diagnosed with serious psychoses, causing him to act out. (Id., ¶26.) Between February 15, 2014 and May 29, 2014, plaintiff was placed in the restraint chair at least twelve times, with some occasions for multiple days at a time. (Id.)

On July 11, 2016,[2] Defendant Faircloth authorized the placement of Plaintiff in the restraint chair, and all other named defendants proceeded to forcibly strap Plaintiff in the restraint chair. (Id., ¶29.) Commencing on July 11, 2016, Plaintiff was left strapped in the restraint chair continuously until he was transported to Ancora Psychiatric Hospital on July 27, 2016. (Id., ¶28.) While strapped in the restraint chair, Plaintiff experienced

---

[2] The Amended Complaint has the date "July 11, 2014" but the Court assumes "2014" was a typographical error and that Plaintiff intended to allege that he was put in the restraint chair from July 11, 2016 through July 27, 2016.

excruciating pain in his body and burning in his eyes from being sprayed in the face. (Am. Compl., ECF No. 22, ¶30.) Plaintiff urinated and defecated in his pants as he was not permitted to use the bathroom. (Id.) Upon his arrival at Ancora, Plaintiff was covered in his own feces. (Id., ¶28.)

Plaintiff asserts the following causes of action: Count One—Federal 1983 Claims; Count Two—42 U.S.C. §1985—Conspiracy; Count Three—Policy and practice/Monell; Count Four—New Jersey State Constitutional Claims; Count Five—State Law Conspiracy; Count Six—State law Policy and practice/Monell. (Am. Compl., ECF No. 22, ¶¶34-63.)

II. STANDARD OF REVIEW

On a Rule 12(b)(6) motion to dismiss, courts must accept the Plaintiff's allegations as true "with the important caveat that the presumption of truth attaches only to those allegations for which there is sufficient "factual matter" to render them "plausible on [their] face." Schuchardt v. President of the United States, 839 F.3d 336, 347 (3d Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). The plausibility determination is context-specific and requires a reviewing court to draw on its judicial experience and common sense. Id. (citations omitted).

A plaintiff has the burden of pleading sufficient "factual matter" but need not plead "specific facts." Id. (quoting Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 569 (2007) and Erickson v. Pardus, 551 U.S. 89, 93 (2007)). "Implicit in the notion that a plaintiff need not plead 'specific facts' to survive a motion to dismiss is that courts cannot inject evidentiary issues into the plausibility determination." Id. A court may not dismiss a complaint based on the court's "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Id. (quoting Twombly, 550 U.S. at 573.)

In reviewing the sufficiency of a complaint, a court must first identify the legal elements required to state a cognizable claim. Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011) (citing Iqbal, 129 S. Ct. at 1950, Santiago v. Warminster Tp., 629 F.3d 121, 129-30 (3d Cir. 2010)). Second, the court should identify allegations that are no more than conclusions that are not entitled to an assumption of truth. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016). Under Twombly and Iqbal, only legal conclusions are discounted, while "even outlandish allegations" are entitled to a presumption of truth unless they are merely "formulaic recitations of the elements of a … claim." Id. at 789 (citing Iqbal, 556 U.S. at 681.) "[T]he clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point." Connelly, 809 F.3d at 790 (citing

Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir. 2011) (citation and internal quotation marks omitted).

Third, a court must determine whether the "well-pleaded factual allegations plausibly give rise to an entitlement to relief." Argueta, 643 F.3d at 74 (citing Iqbal, 129 S. Ct. at 1950, Santiago, 629 F.3d at 129-30.) The plausibility requirement "'is not akin to a 'probability requirement.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). The plausibility requirement requires a pleading to show "'more than a sheer possibility that a defendant has acted unlawfully.'" Connelly, 809 F.3d at 786 (quoting Iqbal, 556 U.S. at 678)). Allegations that are "merely consistent with a defendant's liability" … are not enough. Santiago, 629 F.3d at 133 (quoting Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted)). Where there is an allegation consistent with a defendant's liability but there is an "obvious alternative explanation," the inference of the defendant's liability is not plausible. Id.

III. DEFENDANTS' MOTION TO DISMISS

    A.    The Parties' Arguments

Defendants move to dismiss the Amended Complaint for the following reasons: (1) the two-year statute of limitations bars Plaintiff's constitutional claims in Counts I, III, IV and VI; (2) Plaintiff's Monell claims (Counts III, VI) fail to allege plausible grounds for relief; (3) Plaintiff's Section 1986 conspiracy claim

is barred by the one-year statute of limitations and fails to state a plausible claim for relief;[3] (4) Plaintiff's state law civil conspiracy claim fails as a matter of law because Plaintiff did not comply with the notice provision of the New Jersey Tort Claims Act; and (5) the individual defendants are entitled to qualified immunity. (Defs' Brief, ECF No. 20-2.)

In opposition to the motion to dismiss, Plaintiff asserts: (1) Plaintiff's Amended Complaint cures the mistakenly pleaded § 1986 claim by properly pleading § 1985, which carries a two-year statute of limitations; (2) the New Jersey Tort Claims Act does not apply to New Jersey Civil Rights Act claims including claims for conspiracy to deprive civil rights; (3) Plaintiff's claims are not time-barred; (4) Plaintiff has adequately pled a <u>Monell</u> claim based on improper/lack of training and supervision, and established policy, practice or custom. (Pl's Opp. to Defs' Mot. to Dismiss, ECF No. 24.)

In reply, Defendants contend that: (1) the continuing violations doctrine does not save Plaintiff's claims from the statute of limitations bar; (2) Plaintiff's § 1985 claim fails as a matter of law; (3) Plaintiff has not corrected the pleading deficiencies in the original complaint with respect to his <u>Monell</u>

_____

[3] Due to a typographical error, Plaintiff initially brought his claim under 42 U.S.C. § 1986. (Compl., ECF No. 1, ¶¶35-38.) Plaintiff corrected the error in the Amended Complaint, Count Two. (Am. Compl., ECF No. 22, ¶¶40-43.)

and state law claims; (4) the Court need not permit discovery prior to addressing the qualified immunity defense; (5) Plaintiff's civil conspiracy tort claim is barred by Plaintiff's failure to provide a notice of claim under the NJTCA. (Defs' Letter, ECF No. 25.)

Plaintiff counters that: (1) his allegations in the Amended Complaint support application of the continuing violations doctrine to bring his claims within the two-year statute of limitations; (2) Plaintiff sufficiently pled his § 1985 claim; (3) the NJTCA does not apply to claims under the NJCRA of conspiracy to commit civil rights. (Pl's Letter, ECF No. 26.)

B.     Analysis

1.     Statute of limitations on Plaintiff's state and federal constitutional claims

If "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations," a statute of limitations defense may be made in a Rule 12(b)(6) motion. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2012) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). In determining the statute of limitations for a claim arising under 42 U.S.C. § 1983, courts apply the limitations period applicable to personal-injury torts in the state in which the cause of action arose. Wallace v. Kato,

549 U.S. 384, 387 (2007). Plaintiff's claims arose in New Jersey, where personal injury claims are governed by a two-year statute of limitations. Estate of Lagano v. Bergen Cty. Prosecutor's Office, 769 F.3d 850, 859 (3d Cir. 2014) (citing N.J.S.A. 2A:14-2). Plaintiff's claims under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.* are also governed by a two-year statute of limitations. Melendez-Spencer v. Shack, 747 F. App'x 910, 913 (3d Cir. 2018)(per curiam)).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace, 549 U.S. at 388. Under federal law, a claim accrues when the plaintiff has a complete cause of action, in other words "when 'the plaintiff can file suit and obtain relief.'" Id. (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc., 522 U.S. 192, 201 (1997)).

Under federal law, the continuing violation doctrine postpones the running of the statute of limitations "'when a defendant's conduct is part of a continuing practice.'" Randall v. City of Philadelphia Law Department, 919 F.3d 196, 198 (quoting Brenner v. Local 514, United Bhd. Of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991). "[S]o long as the last act [in] the continuing practice falls within the limitations period … the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner, 927 F.2d at 198-99

(quoting Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)). The continuing violation doctrine "relies on a *defendant's* continuing acts, not a *plaintiff's* continuing injury." Randall, 919 F.3d at 199 (alterations in original).

"In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is 'more than the occurrence of isolated or sporadic acts." Cowell, 263 F.3d at 292 (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)). Courts should consider the following three factors, and the third factor is most important: (1) whether the violations involved the same type of misconduct, tending to connect them; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence that should have triggered a plaintiff's awareness of and duty to assert his/her rights. Id. The focus is on affirmative acts of the defendants. Id.

Plaintiff filed his original complaint on July 12, 2018. (Compl., ECF No. 1.) Therefore, for his § 1983 and NJCRA claims to fall within the two-year limitations period, his claims must have accrued by July 12, 2016. Plaintiff alleges that between February 15, 2014 and May 29, 2014, he was placed in the restraint chair at least twelve times, with some occasions for multiple days at a time. (Am. Compl., ECF No. 22, ¶27.) Plaintiff also alleges that he was placed in the restraint chair beginning on July 11, 2016

and was not removed from the chair until he was transported to Ancora Psychiatric Hospital on July 27, 2016. (Am. Compl., ECF No. 22, ¶28.)

Here, the third and most important factor in application of the continuing violations doctrine, degree of permanence, strongly supports a finding that Plaintiff should have asserted his rights based on Defendants' use of the restraint chair in February 2014 through May 29, 2014. Plaintiff was allegedly restrained in the chair at least twelve times in four months. At that point, he should have known to assert his rights, and the statute of limitations permitted him two years in which to do so. The Court dismisses the § 1983 and NJCRA claims based on use of the restraint chair in 2014.

Plaintiff does not allege another use of the restraint chair between May 29, 2014 and June 10, 2016. The alleged use of the restraint chair on July 11, 2016 was an isolated incident from the 2014 incidents. But the restraint chair was allegedly used continuously from July 11, 2016 through July 27, 2016, constituting a continuing act by Defendants. The continuing violations doctrine extends the two-year statute of limitations from July 11, 2018 until July 27, 2018, and that part of Plaintiff's § 1983 and NJCRA claims may proceed.

## 2. Failure to state a constitutional claim

Defendants argue that Plaintiff failed to state a constitutional claim. (Def's Brief, ECF No. 20-2 at 12.) "[T]he 'NJCRA was intended to serve as an analog to [Section 1983]; it was intended to 'incorporate and integrate seamlessly' with existing civil rights jurisprudence." Chapman v. N.J., No. CIV. 08-4130(AET), 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) (quoting Slinger v. State of New Jersey, 2008 U.S. Dist. LEXIS 71723, at *15.) Therefore, "[c]ourts have repeatedly construed the NJCRA in terms nearly identical to … Section 1983." Id. (citing Newport v. Fact Concerts, 453 U.S. 247, 259-261 (1981); Allen v. Fauver, 768 A.2d 1055 (2001)). Because it is not known whether Plaintiff was a convicted prisoner, to whom the Eighth Amendment applies, or a pretrial detainee, to whom the Fourteenth Amendment applies, the Court will address Plaintiff's excessive force claim under the Eighth and the Fourteenth Amendments, along with the analogous NJCRA claims.

In the Amended Complaint, Plaintiff alleges that under CMCCC's policy, staff may use the restraint chair when they have a reasonable concern that an inmate's behavior is a threat to himself, other inmates, or corrections staff. (Am. Compl., ECF No. 22, ¶22.) Plaintiff also alleges that during the relevant time period, he was diagnosed with "serious psychoses causing him to act out." (Id., ¶26.) Defendants note that Plaintiff never alleged

when he ceased acting out. (Def's Brief, ECF No. 20-2 at 12.) Thus, Defendants conclude that the Amended Complaint alleges staff used the restraint chair in accordance with policy and not in violation of law. (Id.)

    a.  Eighth Amendment

"Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." Young v. Martin, 801 F.3d 172, 180 (3d Cir. 2015) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citation and internal quotation marks omitted in original). "'Application of force by ... prison guards exceeding that which is reasonable and necessary under the circumstances' may be actionable[.]" Id. (quoting Davidson v. O'Lone, 752 F.2d 817, 827 (3d Cir. 1984)). Where a claim of excessive force involves use of mechanical restraints, the following conduct constitutes excessive force:

> (1) where the inmate had "already been subdued, handcuffed, [and] placed in leg irons," and (2) there was a "clear lack of an emergency situation" such that "[a]ny safety concerns had long since abated," then (3) subjecting the inmate to "substantial risk of physical harm" and "unnecessary pain" serves no penological justification.

Id. (quoting Hope v. Pelzer, 536 U.S. 730, 738 (2002)).

Defendants are correct that Plaintiff alleges he was "diagnosed with serious psychoses causing him to act out" during the relevant time period. (Am. Compl., ECF No. 22, ¶26.) Plaintiff,

13

however, does not allege the manner in which he "acted out" or whether his "acting out" was continuous or in discrete episodes. Assuming Plaintiff was placed in the restraint chair on July 11, 2016 for acting out in a manner that posed a risk of harm to himself or others, the question becomes when, if ever, did Plaintiff no longer pose a risk to himself or others. By alleging that he was strapped into a restraint chair with his hands and legs cuffed for nearly two continuous weeks, the allegations in the Amended Complaint create a plausible inference that at some point Plaintiff no longer presented a safety risk that would justify the continued use of restraints. See e.g. Bistrian v. Levi, 696 F.3d 352, 372 (3d Cir. 2012) (construing the facts in the light most favorable to plaintiff on a motion to dismiss and affording him all reasonable inferences). Therefore, Plaintiff states an Eighth Amendment and analogous NJCRA claim in the Amended Complaint.

### b.    Fourteenth Amendment

By extension of the Supreme Court's holding in Hope, that a convicted prisoner's claim involving use of mechanical restraints is governed by the Eighth Amendment excessive analysis, a pretrial detainee's claim of excessive force must be analyzed under the Fourteenth Amendment's Due Process Clause. In Kingsley v. Hendrickson, the Supreme Court held that the Due Process analysis of an excessive force claim is objective. 135 S. Ct. 2466, 2473

(2015). "'[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 395, n. 10 (1989)). "[I]n the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation to that purpose.'" Kingsley, 135 S. Ct. at 2373-74 (quoting Bell v. Wolfish, 441 U.S. 520, 561 (1979)).

Plaintiff alleges that "Defendants' unlawful and inappropriate use of the restraint chair on plaintiff was for the purpose of punishment and intimidation and at times simply because they did not know what to do with plaintiff. Defendants' (sic) unlawfully and illegally used the restraint chair on plaintiff as an instrument of torture." (Am. Compl., ECF No. 22, ¶31.) This allegation meets the "punishment" element of a Fourteenth Amendment excessive force claim. Even considering Defendants' argument that Plaintiff had severe psychoses that caused him to act out, the alleged use of the restraint chair for a continuous period from July 11, 2016 through July 27, 2016 is sufficient to allege that Defendants' use of the restraint chair appeared excessive in relation to the purpose of protecting others from Plaintiff's "acting out." Plaintiff's Fourteenth Amendment excessive force and analogous NJCRA claims may proceed.

### 3.    Failure to state a § 1985 conspiracy claim

Defendants contend Plaintiff failed to state a claim under § 1985 because Plaintiff did not allege that the constitutional violation was motivated by a racial or class-based discriminatory animus. (Defs' Letter, ECF No. 25 at 2.) Plaintiff counters that he alleges he was suffering from psychoses and he was discriminated against on that basis by repeated use of the restraint chair. (Pl's Letter, ECF No. 26 at 2.)

Plaintiff's claim falls under subsection 3 of 42 U.S.C. § 1985.[4] To state a claim under 42 U.S.C. § 1985(3),

> a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997), as amended (May 15, 1997).

In Count Two of the Amended Complaint, Plaintiff alleges that

> the actions of Defendants Faircloth, Warcham, Hoover, Lear Grencavich, Hill, Howard and John Does 1-100 amounted to a civil conspiracy to directly deprive Plaintiff of equal protection of the law, denied due process of law, and subjected to cruel and unusual punishment in

---

[4] 42 U.S.C. § 1985 (1) and (2) involve conspiracies that, respectively, prevent an officer from performing duties and obstruct justice by intimidating a party, witness or juror.

> violation of the United States Constitution 42
> U.S.C. §1985.

(Am. Compl., ECF No. 22, ¶41.) Plaintiff also alleges that he was diagnosed with serious psychoses during the relevant time period (Am. Compl., ECF No. 22, ¶26), and that "Defendants' unlawful and inappropriate use of the restraint chair on plaintiff was for the purpose of punishment and intimidation and at times simply because they did not know what to do with plaintiff." (Id., ¶31.)

Plaintiff has not alleged that Defendants used the restraint chair only on persons with psychoses or other mental disorders or that Defendants used the restraint chair on him when he was not acting out. Plaintiff has not pled sufficient facts supporting a claim that Defendants' use of the restraint chair was motivated by class-based animus. Therefore, Plaintiff fails to state a claim under § 1985(3). This claim is dismissed without prejudice.

### 4. Failure to state a Policy and Practice/Monell claim

Plaintiff's "policy and practice/Monell" claims fall under Section 1983 and the NJCRA and assert supervisory and municipal liability against Cape May County Sheriff Gary G. Schaffer, CMCC Warden Donald Lombardo ("the Administrator Defendants"), Cape May County Sheriff's Office and Cape May County ("the County Defendants") for the alleged use of excessive force in violation of the Eighth Amendment and the New Jersey Constitution by misuse of the restraint chair. (Am. Compl., ECF No. 22, ¶¶44-48, 59-63.)

A municipality is "liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989). A plaintiff must allege that the constitutional injury was caused by a municipal "policy" or "custom." Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 694 (1978). A species of supervisory liability claims is similar; "supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" Santiago, 629 F.3d at 129 n.5 (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir.2004) (first alteration added)).

> Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

Mulholland v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted) (alterations in original).

Where the policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into

contact." <u>Thomas v. Cumberland Cty.</u>, 749 F.3d 217, 222 (3d Cir. 2014) (quoting <u>Carter v. City of Phila.</u>, 181 F.3d 339, 357 (3d Cir. 1999) (quoting <u>City of Canton, Ohio</u>, 489 U.S. at 388). To state a § 1983 claim for failure to train, a plaintiff "must identify a failure to provide specific training that has a causal nexus to their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997)).

Defendants contend that Plaintiff's supervisory/municipal claims are vague and conclusory assertions that corrections officers have not been properly trained and there was a failure to take appropriate remedial measures. (Defs' Brief, ECF No. 20-2 at 14.) Plaintiff counters that his policy claims are based on Defendants' use of the restraint chair as a matter of convenience because they did not know how to handle Plaintiff. (Pl's Opp. To Defs' Mot. to Dismiss, ECF No. 24 at 7.)

In the Amended Complaint, Plaintiff alleges that the County Defendants and the Administrator Defendants "acted with deliberate indifference to Plaintiff's … constitutional rights by failing to enact and/or otherwise permitted a policy and custom of corrections officer corruption and abuse of prisoner rights." (Am. Compl., ECF No. 22, ¶40.) Plaintiff further alleges that the County Defendants

and the Administrator Defendants "failed to train and supervise their employees; were grossly negligent in the supervision of their subordinates; created and/or permitted a policy or custom under which unconstitutional practices occurred and/or because this problem had occurred on previous occasions and by failing to take appropriate remedial measures." (Am. Compl., ECF No. 22, ¶41).

Plaintiff's municipal/supervisory § 1983 claims are deficient for several reasons. First, Plaintiff has not identified a specific training or supervisory deficiency that caused the alleged constitutional violation. The allegation that Plaintiff suffered from psychoses and that Defendants did not know how to handle him is too vague to create a plausible inference that there was a specific training program or supervisory practice that would have avoided the constitutional violation. See City of Canton, Ohio, 489 U.S. at 391 (the plaintiff must prove the injury would have been avoided "had the employee been trained under a program that was not deficient in the identified respect.")

Second, "a course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law." McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) (quoting Andrews, 895 F.2d at 1480 (quoted in Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citations omitted). "Custom requires proof of knowledge and acquiescence by

the decisionmaker." Id. (citing Watson v. Abington Twp., 478 F.3d 144, 154 (3d Cir. 2007); Beck, 89 F.3d at 971.)) Plaintiff's bare assertion that "this problem had occurred on previous occasions" falls short of pleading a "well-settled" practice of which a decisionmaker was aware and acquiesced in. Plaintiff's supervisory and municipal § 1983 and NJCRA claims will be dismissed without prejudice.

     5.    <u>Failure to file Tort Claim Notice for New Jersey civil conspiracy claim</u>

Plaintiff alleges that Defendants Faircloth, Warcham, Hoover, Lear, Grencavich, Hill, Howard, and John Doe 1-100 ("the Individual Defendants") engaged in a civil conspiracy under state law (Count Five). Defendants contend that Plaintiff's failure to serve timely notice of tort claim pursuant to the New Jersey Tort Claims Act ("TCA") is fatal to his New Jersey civil conspiracy claim. Plaintiff argues that the TCA does not apply to state law civil conspiracy claims.

Under the TCA, no action may be brought against a public entity or public employee unless it is in accord with the procedure established under the Act. N.J.S.A. 59:8-3. The TCA established a ninety (90) day period from the time the claim accrued for a claimant to file a Notice of Claim. N.J.S.A. 59:8-8. The TCA provides, in pertinent part:

> A claim relating to a cause of action for death
> or for injury or for damage to person or to

> property, shall be presented as provided in
> this chapter not later than the ninetieth day
> after accrual of the cause of action. . . .
> The claimant shall be forever barred from
> recovering against a public entity or public
> employee if:
>
> a. he failed to file his claim with the public
> entity within ninety days of accrual of the
> claim . . . .
>
> b. Two years have elapsed since the accrual of
> the claim . . .

N.J.S.A. 59:8-8.

It is well-settled that the TCA's notice provision applies to the tort of civil conspiracy. Cty. Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 174–75 (3d Cir. 2006). Applying the NJTCA to a civil conspiracy claim hinders the state tort claim but it does not "add another hurdle for bringing a distinct § 1983 or state constitutional claim because a conspiracy is not an element of such claims." Id. Thus, the Third Circuit has held that the NJTCA notice requirements are applicable to New Jersey civil conspiracy claims. Id. at 175. Because more than two years have elapsed since accrual of Plaintiff's New Jersey civil conspiracy claim, on July 27, 2016 at the latest, and he did not comply with the TCA notice requirement, this claim is barred and is dismissed with prejudice.

### 6. Qualified immunity

"The Individual Defendants," including Schaffer, Lombardo, Faircloth, Grencavich, Hill, Hoover, Howard and Lear contend they

are entitled to qualified immunity for Plaintiff's Section 1983 and NJCRA claims. (Defs' Brief, ECF No. 20-2 at 20-22.) Plaintiff argues that dismissal on qualified immunity is premature because he has not had the opportunity to conduct discovery. (Pl's Opp. To Defs' Mot. to Dismiss, ECF No. 24 at 8.)

The qualified immunity doctrine is an affirmative defense available for § 1983 and NJCRA claims for money damages. Lapolla v. Cty. of Union, 157 A.3d 458, 467 (N.J. Super. Ct. App. Div. 2017) (quoting Ramos v. Flowers, 56 A.3d 869, 875-76 (N.J. Super. Ct. App. Div. 2012). A defendant is entitled to qualified immunity "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted in Kisela). "'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.'" Id. (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam )). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" Kisela, 138 S. Ct. at 1153 (quoting Plumhoff v. Rickard, 134 S. Ct. 2012, 2023, (2014)).

"[F]or a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 1152 (quoting White, 137 S. Ct. at 551 (internal quotation marks omitted in Kisela)).

Defendants rely on Diaz, where the Third Circuit held that placing an inmate who behaving violently in a restraint device for a prolonged period of time, for the inmate's own protection and the protection of others, does not constitute cruel and unusual punishment or deliberate indifference. (Defs' Brief, ECF No. 20-2 at 22 (citing Diaz v. Director Federal Bureau of Prisons, 716 F. App'x 98, 101 (3d Cir. 2017) (per curiam)). Defendants assert that Plaintiff readily admits that he was suffering from and diagnosed with "serious psychoses" causing him to act out. (Id.)

The facts alleged in the Amended Complaint do not establish when Plaintiff acted out, how he acted out, and how long his episode(s) of acting out lasted. It is not known if Plaintiff was acting out in a violent manner when he was allegedly put in the restraint chair on July 11, 2016. Even assuming Plaintiff was acting out violently on July 11, 2016, the Amended Complaint does not contain any allegations concerning Plaintiff's behavior between July 11, 2016 and July 27, 2016, a period in which Plaintiff alleges he was continuously kept in the restraint chair without bathroom breaks. At this stage of the litigation, insufficient facts are known to determine whether Diaz is

controlling precedent suggesting that the defendants acted reasonably in this case.

"[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." <u>Gibbs v. Coupe</u>, No. CV 14-790-SLR, 2015 WL 6870033, at *2 (D. Del. Nov. 6, 2015) (quoting <u>Newland v. Reehorst</u>, 328 F. App'x 788, 791 n. 3 (3d Cir. 2009) (per curiam)); <u>accord</u> <u>Batiz v. Brown</u>, No. CIV. 12-581 RMB/AMD, 2013 WL 1137531, at *7 (D.N.J. Mar. 14, 2013). Additional factual development is necessary in this case before the Court can undertake a qualified immunity analysis. Therefore, Defendants' motion to dismiss on qualified immunity grounds is therefore denied without prejudice.

IV.   CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss [the Amended Complaint] is granted in part and denied in part.


An appropriate Order follows.

**Date**: June 5, 2019

                              `                    s/Renée Marie Bumb
                                                   **RENÉE MARIE BUMB**
                                                   **UNITED STATES DISTRICT JUDGE**